The next case today is Jorge Ponsa-Rabell et al. v. Santander Securities, LLC et al. Appeal number 20-1857. Attorney Ketglas Jordan, please introduce yourself for the record and proceed with your argument. Yes, good morning, your honors. My name is Eric Ketglas Jordan. I represent the plaintiffs, Ponsa-Rabell et al. Before I start, I respectfully request to save a few minutes for a quick bottle. How many, counsel? That may be allowed. Counsel, how many minutes? Four minutes. Four minutes?  I apologize. Suddenly, my granddaughter walked in. I'm here in the apartment. I apologize. Let's start. Hopefully, we won't hear any noise in the back. Yes, your honors, as you know, the case has been, I believe, very well briefed. You have all the positions of the parties. We rely mostly on our reply. I believe our reply very clearly states our issues on appeal. Respectfully, we believe that the court misconstrued essential elements of the allegations. In essence, there are some findings at first that we have not alleged material facts that were disclosed. Thus, there can be no material omissions. The record is clear, and I believe that has been shown through the briefing that, yes, there are. Santander acknowledges for purpose of the motion. Maybe I missed it, but you're alleging material omissions. It's not clear to me from the briefs and the record what statements were made to you at the time of sale. Precisely that. I'm sorry. I apologize. Well, what statements were made so that we can see how you're saying material omissions apply to those? Yes, clearly, and you can see from the briefings, all the public materials that were produced and were available in the market stated that these products were consistent with the investment objective of current income and preservation of capital. What we're saying is that at the time of the point of sale, that was a misrepresentation because the circumstances have changed. We have rules that govern the sales of municipal bonds, and they do require that all material facts are disclosed. The circumstances have changed, mostly during the period of 2012. From December 2012 forward, the Puerto Rico economy was showing marked changes that led the broker dealers aware that there were some circumstances that these products were becoming very, very, very risky. On the other hand, while they're making the sales, and these sales are important because these sales were solicited. Solicited means that it's the broker dealer that approaches the client and tells him, I want to offer you this product, and then it gives him all these prospectus and materials that say that these products are relatively safe because they have been consistent with current income and preservation of capital, when at the time they were not. Council, I have a question for you concerning the basic premise here, which is that, as I understand it, your view is Santander may not sell securities to investors when it's trying to unload the same securities for its portfolio. Assuming that brokerage outfits do that all the time, because there are some investors who may have a greater risk tolerance than the brokerage outfit itself, one of the questions then becomes, do they really have a fiduciary obligation? What I saw you cited for a fiduciary obligation is 31 LPRA 3375, but that talks about principles of fair dealing and good faith, that it must be fair and balanced on the good faith requirements mandated by PR contract law, but that strikes me that the obligation of good faith is not a fiduciary obligation, is it? My question really is, could you tell me where you get the argument that Santander has a fiduciary obligation in the sales that it made on the security? Yes, Your Honor, and I go directly to Puerto Rico Regulation 6078, Section 25.1 that states, every broker-dealer must observe the highest standard of fiduciary duty toward their customers and investors. So it's clearly on the protocol, that's applicable regulations that apply to this transaction. And also, then you go to the end... Is there a Puerto Rico case that says that statute that you quote, creates a fiduciary responsibility? Yes, we have cited the case, it's Mendez-Morin, and it's on the brief. The issue is, Your Honor, that as you may know, these cases rarely get to court, because most of the time, most of the securities cases are in arbitration. But there is a case, Mendez-Morin, that clearly states that it's a fiduciary duty that applies on the Puerto Rico law, and that is actionable under Puerto Rico laws, and securities laws, and it's very clear. That's not a... It's a majority decision, which is not an opinion of the court, but it's a majority decision of the court, and respectfully, that's the law. So dealing with other issues, the issue, Your Honor, that you also asked, I believe, Mr. Woodcock, is that although there might not be a duty to disclose at the end point in time, that a broker-dealer is selling from its inventory, the issue here goes mostly to the intent and motive knowledge, because one of the issues the court finds that it says that although it was plausible, an inference of Sienter, that it was not a strong inference, and I respectfully submit that precisely. That's one of the facts that show the Sienter, because it's not the fact that they have to inform that they were doing this. The fact that they have to inform why they were doing it, and the reason why they were doing it is because they were risky. So they're telling their clients, buy this, it's safe, according to the prospectus, it's safe, you can buy this, it's going to provide you income and preservation of capital, and that's a public statement, that the clients have been a class action to rely on, and then at the same time, they were doing totally the opposite. They were getting rid of the product because they were too risky, and we've been dealing with these cases, not only them, if we're allowed to go to trial, it's going to be evidence that all the broker-dealers' houses since December 2012 were doing the same, Popular, UBS, because they were aware of the risk, and they did not transmit those risks to the clients, and why didn't they do that? Because there was a backlog, too heavy inventory, and they got rid of it to avoid their losses, and they will tell the clients, this is risky, the clients weren't going to buy it, and this caused a loss in the market of Puerto Rico of around 280 million dollars to these consumers. Any other questions you want me to address on the time? Because I believe that is my main argument, you know, I believe, you know, very respectfully, I believe we have covered in a nutshell, but that's in the reply, and, you know, at the time, I'll save some rebuttal, but unless you have any questions, I don't have anything else. Thank you, counsel. Yes, if you would mute your device at this time. Ms. Brody. Thank you. May it please the court, I'm Francesca Brody of Sidley Austin, I represent Santander Securities at all the defendants' appellees here. The district court correctly found that plaintiffs failed to state a claim, because they failed to plead two of the required elements of a 10b5 case, an actionable omission and scienter, and on appeals, plaintiffs made three main arguments, all of which fail. First, they asserted that the district court imposed a pleading standard that was too high, but the district court applied the long-established standard for pleading fraudulent omissions under the Exchange Act, and plaintiffs have argued here that they can't meet that Second, plaintiffs disagree with the court's finding that they failed to plead an actionable omission. As your honor pointed out, they don't identify any prior statement that was rendered misleading, and they can't identify a duty that required Santander to disclose any of the specific facts that they assert were omitted. And third, plaintiffs disagree with the district court's finding that they failed to plead scienter, and that their allegations were correct. The complaint does not have any detail about who knew what and when, and it has none of the typical markers of scienter pleading. There are no confidential witness accounts of discussions, there are no descriptions of internal documents describing concern about risk, and there are no allegations about warnings that were ignored. And I would remind the court that in the reply brief, plaintiffs dropped all of their allegations against four of the five defendants here. So I'll plan to limit my remarks this morning to why plaintiffs have failed to state a claim against Santander Securities LLC, the broker-dealer, which is the only remaining defendant. Mr. Kwek-Glass directed the court to the reply brief, but I want to address a couple of the points he made this morning that I think are inconsistent with everything here. Mr. Kwek-Glass argued that certain fund disclosures were misleading, but that's not the allegations that have been made in the third amended complaint here. The allegations in the third amended complaint are about omissions, and so the argument that some statement was misleading is a completely new argument and inconsistent with the third amended complaint. Mr. Kwek-Glass also argued that the were safe. Third amended complaint doesn't say that. There's no allegation that plaintiffs were told that securities were safe, and so there's no allegation, no actionable allegation that there was a material omission in that regard. I would like to briefly address the threshold argument that plaintiffs make on appeal, which is that the district court should have applied a lower and a different standard than the one that was applied. Plaintiffs criticized the district for requiring quote specific affirmative allegations of fraud, but the PSLRA and Rule 9b are unmistakably clear that plaintiffs must plead fraud with particularity. They must specify each statement alleged to have been misleading and why, and that's true whether their case is based on misstatements or omissions. Plaintiffs have admitted that that standard is unattainable for them and that they can't meet it. Their argument for a lower standard in omissions cases has no support whatsoever in the law, and this circuit has repeatedly held that omissions are fully actionable in limited circumstances when there's a duty to disclose or the omission renders another statement misleading. The district court applied that well-established standard and committed no error there. Could I get you to address the fiduciary issue in the context of this? I assume that a broker may well wish to sell securities that others may wish to buy because they have a greater risk tolerance, but if a broker is a fiduciary, then that's a different standard and they may be required to affirmatively disclose their own security. So the fiduciary issue, at least, is something that I'd be concerned about. Could you address whether or not a fiduciary standard applies to your client? It's true that there is a fiduciary duty by statute in Puerto Rico law, but it's not true that that standard would require Santander to disclose information about its proprietary inventory, and the cases that discuss the practices of broker-dealers and other financial institutions in terms of their duty to discuss their inventory have found that there is none, and we cite a few of those in our brief, including the Stratt-McClure versus Morgan Stanley case and the In re Ferrar case, which Ferrar is a Puerto Rico case as well. So the duty needs to be decoupled from the idea that Santander, under the Exchange Act, which has very specific standards regarding when material information needs to be disclosed, the duty doesn't fill that gap, and the Exchange Act and the law interpreting it from this circuit, from the Supreme Court, for decades now, is very clear that the duty to speak only exists in order to correct misinformation, in order to correct a prior misstatement, if a prior misstatement is rendered misleading. Under Puerto Rico law, what are the parameters of this fiduciary duty? As far as it pertains to this case, I don't think they're relevant because the fiduciary duty here wouldn't have imposed an obligation on Santander to speak on issues that it had not previously spoken, which includes the inventory question that Judge Woodcock was asking about. So it's only if there's a statement in need of a correction does the fiduciary duty kick in? Is that what you're saying? What I'm saying is that the Exchange Act only makes omissions actionable when a prior statement is rendered misleading by that omission. The fiduciary duty is irrelevant there, and so because there's no prior statement rendered misleading here, and because plaintiffs have identified none in the third amended complaint, there was no duty to provide information about inventory. So what are the parameters of the fiduciary duty in Puerto Rico? The fiduciary duty in Puerto Rico may apply to specific conversations between a particular broker and a particular customer, but it doesn't have application here when you're talking about a class of plaintiffs, all of whom received, you know, different oral communications, and it wouldn't affect the information that was provided to them in the written disclosures, which plaintiffs have not challenged and plaintiffs haven't alleged in the complaint are misleading. I also, in addition to the inventory point, I want to address plaintiff's other omission argument, which is about disclosures about risk generally, and Mr. Klucklass made this point in his remarks that the securities had become risky, but as set forth in our brief and in the appendix before the court, there were substantial specific disclosures about the risks in the Puerto Rico market and in the debt securities that are at issue here. So the idea that anything was undisclosed, it's simply false, and it's rebutted by both the record and the third amended complaint itself, which paragraph 72 identifies a number of public disclosures about risk, which put these plaintiffs on notice of risk in this market. Plaintiff's third argument here was that they adequately allege Cianter, but the district court was correct in finding that their allegations were conclusory. As this court's aware, a plaintiff must state with particularity facts giving rise to a strong inference that the defendant acted with Cianter, and there are simply no such allegations here. There's no allegation, for example, that Santander, pardon me, that someone at Santander was concerned and was blowing a whistle, and that that was ignored. None of the typical markers of a Cianter allegation that you would expect to see in a securities class action. So unless the court has any questions, I'll just very briefly sum up. The district court's dismissal of the third amended complaint was correct, and it should be affirmed, and that's because the court applied the well-established standard for pleading a fraudulent omission, which plaintiffs argue they cannot meet. Plaintiffs have failed to plead an actionable omission, and plaintiffs have failed to plead a strong inference of Cianter. Thank you, Ms. Brody. Thank you. If you would mute your device, Mr. Kwekles, you've reserved four minutes. I'm here. I cannot see me, but can you hear me? Yes, if you would keep speaking a little. Okay, okay. We just re-allowed your camera. It was stuck in the on position before, and now we've got it. It should just take a minute for you to pop up. You should probably just go ahead and begin by introducing yourself on the record. Again, this is Attorney Ketglas. Let me start by saying that Santander is misconstruing the arguments. First, we have not alleged that the court applied an incorrect standard. What we're saying is that the facts were not correctly applied to the standard. Second, what we have said is that this case has been filed mostly in omissions, and why is it filed on omissions? Because this is a class action. If we file and we allege reliance that the clients were told at a given time during the sales process, then there will be a defense that they cannot be proved person by person. Now, the issue is, in fact, that did occur, but we have not alleged it. What we're saying is that these misrepresentations were public. If you see the influence of the complaint, the best way to the point we're saying is that there being outside there public information that was made available to them at the time of purchase that says that these products were adequate for the interest objective that we have alleged, that the objective was to preserve capital and have current income, and then that was false at the time. It was false, and Santander knew it, and why it was false? Because the securities were too risky at the time, and there is no document anywhere that would say at that time that those securities were not adequate for the objectives of capital preservation and current income. Now, Santander knew it was not, and then we have not alleged that they have a duty to inform, and the cases that Santander cites, there's not a general duty to inform if you're selling from inventory. The issue here is why they were doing it, and then we have not done any discovery here, but there is an AWC there, and we have not been able to come with the evidence, but respectfully, I believe there's a strong influence that the reason they were doing it is because of the risk, the risk that they did not disclose to their clients. So, unless you have any questions, I believe that's all. Thank you. So, that will be all. Thanks a lot, sirs. Appreciate your time. Both counsel. That concludes argument in this case. Attorney Queklaus Jordan and Attorney Brody, you should disconnect from the hearing at this time.